UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-708-H

MARILYN HARRIS                                                          PLAINTIFF

V.

BURGER KING CORPORATION                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This action arises from Plaintiff Marilyn Harris's employment with Defendant Burger King Corporation as a part-time cook. Her claims include: racial discrimination, retaliation, and racially hostile work environment, in violation of the Kentucky Civil Rights Act (KCRA); wrongful discharge; promissory estoppel; and negligence. After the close of discovery, Defendant moved for summary judgment on all of Plaintiff's claims.

This is a case in which, if everything she says is true, Plaintiff was treated very badly by one of her store managers. Other than Plaintiff's own beliefs, the Court finds no evidence of a racial motive behind the rude behavior. Plaintiff left her job as a part-time cook to have a medical procedure, believing that she had been promised a job upon her return. She did not return for eight months, at which time no job was available. The Court finds no evidence of discrimination or retaliation in these events. For the reasons stated below, the Court will sustain Defendant's motion.

I.

The relevant facts are as follows. On November 29, 2005, Plaintiff began work as a part-time cook at Defendant's Hillview location, earning $6.75 per hour.[1] Plaintiff is African-American. In June 2006, Plaintiff suffered heat exhaustion at work. She filed a workers' compensation claim, but it was denied because she failed to submit to a drug test within twenty-four hours of the incident. Plaintiff asserts that she was never told about the test.

In December 2006, Gina Priest became the new manager at the Hillview store. Ms. Priest and Plaintiff did not get along. According to Plaintiff, the following events occurred between December 2006 and February 2007. Generally, Ms. Priest would not talk to Plaintiff or other minority employees but did talk to white employees. Ms. Priest also yelled at Plaintiff in front of customers. She gave minority employees, including Plaintiff, lower marks on their "criticals" than white employees, which led to Plaintiff not receiving a raise. She reduced Plaintiff's hours and gave them to a requesting white employee. On one occasion, Plaintiff returned to work after a medical leave and Ms. Priest "screamed at her" about needing a doctor's note. Plaintiff retrieved the note from her car and returned to work. In December 2006, Ms. Priest bumped into Plaintiff and intentionally stepped on Plaintiff's foot once, and she did not apologize. She would not let Plaintiff leave work when she was heavily menstruating. When Plaintiff experienced chest pains at work, Ms. Priest ignored her symptoms, and Plaintiff's coworker drove her to the emergency room after work. In January 2007, Plaintiff did not receive a break when she felt too hot while working. Ms. Priest said, "Get back to work." As a result, Plaintiff fainted from heat exhaustion, and Plaintiff's coworker drove her to the hospital.[2]

---

[1] Plaintiff's pay was raised to $7.00 per hour in September 2006.
[2] It is unclear whether the chest pains and the heat exhaustion were the same or different incidents.

After the heat exhaustion incident, Plaintiff sought to file a workers' compensation claim but was told by another manager named Amy that she could not make a claim. The reason was that Plaintiff had previously attempted to file a workers' compensation claim after a heat exhaustion episode in June 2006, which was denied because Plaintiff failed to take a urine drug test within 24 hours. Amy indicated that she thought that Plaintiff could not file a claim based on the same symptoms that had already been denied.

Finally, Ms. Priest yelled at Plaintiff while trying to locate the Burger King phone. Plaintiff asked her to not "yell at me like that . . . I'm not a child," and Ms. Priest told Plaintiff to clock out. On February 20, 2007, after this last phone incident, Plaintiff called Ryan Petty, Burger King regional manager, to report Ms. Priest's behavior. Plaintiff provided two written statements to him discussing Ms. Priest's work habits and mentioning racial discrimination.[3] Plaintiff maintains that on February 24, Mr. Petty read the statements, spoke to Ms. Priest for a few short minutes, spoke with no other Burger King employees, and determined there was no discrimination. Mr. Petty immediately offered to transfer Plaintiff to the Indian Trail Burger King. She reluctantly accepted and transferred that same day.

At the Indian Trail store, Plaintiff did not experience any further discriminatory behavior. In March 2007, Plaintiff underwent a surgical procedure necessitating time off work. She verbally informed Mr. Petty of this surgery on the date of her transfer, and according to Plaintiff, Mr. Petty told her that she could have her job back after her surgery and recuperation. Plaintiff also claims that she verbally informed her new boss Bisera Advic of her surgery and provided shift manager Christy with a note Plaintiff had written giving two weeks' notice of her surgery, which was then passed on to Ms. Advic. Plaintiff insists that Ms. Advic also promised that she

---

[3] Plaintiff's February 20 written complaint stated, "[Gina Priest] does not like the blacks and latinos." Plaintiff's February 24 written complaint stated, "[Jenny, Plaintiff's coworker] know [Gina Priest] is racist," and "[Gina Priest] don't want nobody to tell or talk about her if you are latino, or Black."

3

could have her job back after her surgery. Plaintiff claims that she called to check in with her manager Ms. Advic once or twice per week during her recuperation to report her progress and discuss her job.

On May 24, 2007, Burger King's automated time records coded Plaintiff as having abandoned her position and terminated her. In November 2007, Plaintiff returned to the Indian Trail Burger King with a doctor's note authorizing her to begin work. Ms. Advic told her there was no work for her. She had been replaced by a white employee named Dennis. A few weeks later, Plaintiff got a job with Ramada Inn earning more per hour than she had earned at Burger King.

II.

Plaintiff alleged the following unlawful activities against Defendant: race discrimination in violation of KRS § 344.040; retaliation for reporting racial discrimination in violation of KRS § 344.280; retaliation for filing a workers' compensation claim in violation of KRS § 342.197;[4] racially hostile work environment; wrongful discharge; promissory estoppel; and gross negligence. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56, which entitles a party to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant must show that there is no genuine issue as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Once accomplished, the nonmoving party can overcome summary judgment by controverting the movant's argument with specific facts. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---
[4] Plaintiff cites Ky. Rev. Stat. § 342.297, which the Court assumes was a typographical error.

587 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court must view the record and make inferences from the alleged facts in the light most favorable to the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008). The Court will now address Defendant's argument in favor of summary judgment as to each of Plaintiff's claims.

III.

The Court will first address Plaintiff's claim under the KCRA for racial discrimination. In this case, there is no direct evidence of discrimination. Absent such evidence, the Sixth Circuit and Kentucky have adopted the *McDonnell Douglas* burden shifting scheme to determine whether a discrimination claim should be submitted to a jury based on circumstantial evidence. *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (applying *McDonnell Douglas* to racial discrimination); *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 801−02 (Ky. 2004) (applying to retaliation); *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 515 (6th Cir. 2009) (applying to racially hostile work environment).

Under this framework, the plaintiff must first establish a prima facie case of race discrimination. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). A prima facie case for racial discrimination in the employment context requires the plaintiff to prove: "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] job; (3) [she] suffered an adverse employment decision; and (4) [she] was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Id.* Defendant does not appear to contest that Plaintiff satisfies the first two elements. As to the final two elements, the parties disagree.

A.

An adverse employment action is "a materially adverse change in the terms and conditions of [the plaintiff's] employment," *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999), and generally involves material changes in employment status such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The main point of disagreement on this element is that Plaintiff asserts that a number of Defendant's actions are adverse actions: denial of medical attention, reduction in work hours, denial of pay raise, transfer to another store, failure to rehire, and termination. The Court will analyze each of these arguments separately. However, only the last one can meet the standard.

i.

Plaintiff argues that she suffered an adverse employment action when Ms. Priest denied her medical attention at work. Allegedly, in January 2007, Plaintiff suffered a heat stroke at work. Plaintiff did not get a break, and Ms. Priest may have told her to get back to work. Ms. Priest otherwise did not assist Plaintiff, and Plaintiff passed out.[5] A coworker took Plaintiff to the hospital. This incident, while unfortunate, does not qualify as an adverse employment action.[6]

---

[5] In her complaint, Plaintiff alleged that Priest threatened to fire her if she did not return to work. Plaintiff later clarified that this threat was made in connection with a different incident in which Plaintiff sought to leave work due to heavy menstrual flow.

[6] In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff asserts for the first time that she was written up after this incident, citing an affidavit of one of her coworkers in support. Plaintiff does not produce any other evidence of such a write-up, nor does she mention it in her deposition. Therefore, the Court finds this allegation unsupported.

ii.

Plaintiff argues that Ms. Priest reduced Plaintiff's work hours in favor of granting a white employee named Jenny additional hours. A reduction in work hours can constitute an adverse employment action. *See Scott v. Donahoe*, 913 F. Supp. 2d 355, 363 (W.D. Ky. 2012). Here, Plaintiff did not have a set number of hours each week. In addition, Plaintiff did not object to the reduction in hours to Ms. Priest or any other management. It is doubtful that the reduction in hours actually materially affected Plaintiff.[7]

Even assuming the reduction in hours materially affected Plaintiff, this claim still cannot survive summary judgment. Plaintiff's alleged fact that her hours were given to a white employee allows Plaintiff to meet her prima facie burden. However, Burger King's proffered legitimate, nondiscriminatory reason for the hours reduction is that this other employee requested the additional hours. That this employee asked for additional hours is undisputed.

Here, Plaintiff provides no evidence of pretext. For example, Plaintiff does not put forth any evidence that while her hours were cut, white employees' hours were not cut. For this reason, Plaintiff's claim for racially discriminatory reduction in hours cannot move forward.

iii.

Plaintiff argues that Ms. Priest gave Plaintiff "suspiciously low" marks on her work evaluation, leading to a failure to receive her appropriate raise. Denial of a proper pay increase as a result of an unjustly negative work evaluation can constitute an adverse employment action. *See White,* 533 F.3d at 403. Here, there is no evidence that Plaintiff was owed a pay raise. Plaintiff admits in her deposition that she received no pay raise after the previous "criticals"

---

[7] Defendant's records, as yet undisputed, show that between December 2005 and December 2006, Plaintiff's weekly hours ranged from 6.12 to 37.78. Between December 2006 and February 2007, while being managed by Priest, Plaintiff's weekly hours ranged from 4.73 to 37.20. Finally, after transferring to the Indian Hills store, Plaintiff's weekly hours ranged from 4.67 to 27.85.

evaluation, which was performed by a different supervisor who awarded her higher marks. She offers no reason why she expected a raise except that she assumed she would receive one.

However, even assuming that Plaintiff was properly owed a pay increase, she has failed to show that she was treated differently than similarly situated non-protected employees. Plaintiff has produced no evidence in the record that any employees received a raise during the time Plaintiff worked for Ms. Priest or at any other relevant time. Accordingly, Plaintiff fails to establish a prima facie case for this claim.

iv.

Plaintiff contends that Burger King's decision to offer her a transfer was an adverse employment action. A decision to transfer ordinarily does not constitute an adverse employment action where the reassignment does not result in any loss in prestige or pay, unless such a transfer constituted a constructive discharge. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996); *Darnell v. Campbell Cnty. Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir. 1991) ("The clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'"). Here, Plaintiff presents no evidence that the transfer brought about a reduction in pay or benefits, nor does she argue that the transfer to the amounted to constructive discharge. On the contrary, she contends that she liked her new manager and did not experience further discriminatory treatment. Accordingly, Plaintiff fails to establish a prima facie case for this claim.

v.

Plaintiff next points to Burger King's failure to rehire her in November 2007. Failure to rehire can be an adverse employment action. However, Plaintiff has not shown (1) that any

position was, in fact, open at the Indian Trail Burger King at that time, or (2) that any employee of any race was hired at or near that time. In addition, Plaintiff has not shown that any white employees have been rehired under similar circumstances. Accordingly, Plaintiff fails to establish a prima facie case for this claim.

vi.

Plaintiff's only viable argument for an adverse action arises from her alleged racially discriminatory termination on May 24, 2007. Termination is the quintessential adverse employment action. Defendant argues that Plaintiff either abandoned her job or voluntarily left it. This is a viable argument. For purposes of this analysis, however, the Court will consider Plaintiff to have been terminated and will consider the reasons under the remainder of the *McDonnell Douglas* burden shifting analysis.[8] Plaintiff has presented evidence that she was replaced by person outside the protected class—a white male named Dennis.

B.

The burden now shifts to Defendant to provide legitimate, nondiscriminatory reasons for the termination. Burger King's proffered reason for terminating Plaintiff is that she voluntarily abandoned her job. It is undisputed that Plaintiff left in March without providing the proper administrative paperwork and that she had not returned by May 24th. In fact, she did not return for another five (5) months. Plaintiff does not contest that she failed to provide the proper paperwork—rather, she claims that she did not know of the requirements and relied on

---

[8] Burger King cites a recent Eastern District of Tennessee decision for the proposition that job abandonment cannot constitute termination. *See Cunningham v. Tenn. Cancer Specialists, PLLC*, 3:12-CV-254, 2013 WL 3716877 (E.D. Tenn. July 12, 2013). However, our case is fundamentally different. For example, here, it is not clear that Plaintiff was aware of Burger King's abandonment policies; Burger King has not cited phone records contradicting Plaintiff's claim that she regularly called in to work to check in; Plaintiff's job was not "critical," full-time, or one-of-a-kind; and Plaintiff had been allegedly promised that her job would be held open.

9

employees' statements that her job would remain open.⁹  Regardless, Burger King has clearly presented a legitimate, nondiscriminatory reason for its action, shifting the burden back to Plaintiff to show that the stated reason was a mere pretext.

The Sixth Circuit has identified three ways in which a plaintiff can demonstrate pretext:

> The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). Plaintiff must produce sufficient evidence for the jury to reasonably reject Burger King's explanation and infer intentional discrimination. *See Braithewaite v. Timken, Co.*, 258 F.3d 488, 493−494 (6th Cir. 2001). "[F]or an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 806−07 (6th Cir. 1998)).

Plaintiff cannot show that Burger King's stated reason for terminating her has no basis in fact, nor can she show that the reason offered was insufficient to explain the employer's action. Plaintiff's only argument, therefore, is that Burger King's proffered reason for termination her was not the actual reason for termination. Plaintiff argues that the actual reason that Mr. Petty and Ms. Advic failed to preserve her job was racial animus. However, there is simply not enough evidence in the record to support an inference of intentional discrimination or that the stated reason was not the real reason.

---

⁹ Plaintiff admits in her deposition that she knew she needed to bring in a doctor's note before taking a medical absence.

Plaintiff's position became open because she failed to submit the proper paperwork and she was deemed terminated. The fact that a white employee was hired to replace Plaintiff is not by itself enough to establish pretext in the face of Defendant's particularized facts. *See Wright*, 455 F.3d at 708. There is simply not any evidence in the record to support an inference that Defendant's stated reasons were a pretext to mask intentional discrimination.

Plaintiff says that both Mr. Petty and Ms. Advic promised her a job after she recovered from her surgery. However, Plaintiff did not make the proper paperwork application. And, even if a jury were to believe that Mr. Petty and Ms. Advic made promises, breaking them would not suggest either racial animus or some other illegal motive.

IV.

Plaintiff next alleges that Burger King retaliated against her for reporting race discrimination to Burger King and for filing a workers' compensation claim.

To establish a prima facie case for retaliation, Plaintiff must show (1) her engagement in a protected activity, (2) Burger King's knowledge of that activity, (3) a subsequent adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "The burden of establishing a *prima facie* case in a retaliation action is . . . one easily met." *Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x. 434, 446 (6th Cir. 2013) (quoting *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008)) (internal quotation marks omitted). Recently, the Supreme Court ruled that claims of retaliatory termination are subject to a heightened but-for standard of causation, rather than the "motivating factor" test. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

The Court will analyze each of Plaintiff's retaliation claims separately.

A.

Plaintiff claims that Burger King retaliated against her for making an internal racial discrimination complaint when it transferred her to a different Burger King store and subsequently terminated her. Plaintiff has demonstrated that she engaged in a protected activity of which Burger King was aware, and she was subsequently terminated.[10]

The remaining element of Plaintiff's prima facie case is causation. "One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment action[ ] and the protected activity." *Nicholson*, 530 F. App'x at 447. This Court has previously recognized that "this Circuit has not adopted a uniform approach on whether causal connection may be established solely on the basis of temporal proximity." *Brown v. Humana, Ins. Co.*, 942 F. Supp. 2d 723, 735 (W.D. Ky. 2013) (quoting *Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012)) (internal quotation marks omitted). However, "more recently published Sixth Circuit cases seem to suggest that temporal proximity alone is sufficient where the temporal proximity is significant . . ." *Brown*, 942 F. Supp. 2d at 736; *see also Nguyen*, 229 F.3d at 567 (internal quotation marks omitted) (for a prima facie case based on temporal proximity alone, the gap between the protected activity and the adverse action usually must be less than six months).

Plaintiff called Ryan Petty on February 20, met with him in person on February 24, and was coded by the computer as terminated around May 24, 2007. This Court has found that, under Sixth Circuit jurisprudence, "three months is close enough temporal proximity to raise an inference of causation." *Id.* (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007)

---

[10] As described more fully above, Plaintiff's transfer does not qualify as an adverse employment action because it involved no change in pay, benefits, title, or job duties. *See Reed v. Bluegrass Reg'l Psychiatric Servs., Inc.*, 2008-CA-000569-MR, 2009 WL 1257675 (Ky. Ct. App. May 8, 2009) (transfer could not be the basis of plaintiff's retaliation action).

12

(internal quotation marks and alterations omitted); *see also Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012); *Singfield v. Akron Metro. Housing Auth.,* 389 F.3d 555, 563 (6th Cir. 2004). However, there are certainly conflicting cases within the Sixth Circuit, depending on the circumstances. *See Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 880 (6th Cir. 2013); *Hamilton v. General Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009).

Assuming a prima facie case, the burden shifts to Burger King to produce a legitimate, nondiscriminatory reason for its termination of Ms. Harris. Once again, Burger King maintains that the computer system automatically terminated Plaintiff when it coded her as having abandoned her job. Burger King's reason for termination is that Plaintiff did not work for eleven weeks and did not fill out the requisite paperwork to obtain medical leave before she underwent surgery. This is a legitimate reason for termination.

Again, the burden shifts back to Plaintiff to show that the proffered reason was a mere pretext for discrimination. In addition, Plaintiff must demonstrate the requisite but-for causal connection between her complaint and her termination. That is, Plaintiff must make a showing that, but-for her complaint, she would not have been terminated. Temporal proximity is not sufficient to show pretext. *See Nicholson,* 530 F. App'x at 448 (two-month gap did not demonstrate pretext). For similar reasons that Plaintiff cannot establish pretext in her racially discriminatory termination claim, Plaintiff cannot establish pretext for her retaliatory termination claim. There simply is little to no evidence of discrimination belying Plaintiff's administrative termination. The Court need not reach the question of but-for causation.

B.

Plaintiff's claim for retaliation based on her attempt to file a workers' compensation claim in early 2007 is far from clear, and Plaintiff does not defend this claim in her response to

13

Defendant's motion for summary judgment. It appears that Plaintiff alleges that Burger King failed to rehire her because she had attempted to file a workers' compensation claim.

Plaintiff likely engaged in a protected activity when she attempted to file a workers' compensation claim. *See Unifirst Corp. v. Stewart*, 2006-CA-000993-MR, 2009 WL 960690, at *5 (Ky. Ct. App. Apr. 10, 2009) (pursuit does not require that a claim actually be filed). However, Plaintiff conceded that Ms. Advic, the manager who failed to rehire Plaintiff, did not know about her attempted workers' compensation claim. More importantly, Plaintiff stated that she did not believe that Ms. Advic failed to rehire her because she had previously attempted to make a claim for workers' compensation. Therefore, Plaintiff does not even sufficiently allege causation. For this reason, the Court will dismiss Plaintiff's claim for retaliation based on pursuit of a workers' compensation claim.

V.

Plaintiff brings a hostile work environment claim predicated on racial discrimination.[11]

> A plaintiff establishes a prima facie case of racial discrimination based upon a hostile work environment by showing that (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was race-based; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer was liable for the harassing conduct."

*Scott v. G & J Pepsi-Cola Bottlers, Inc.,* 391 F. App'x 475, 477–78 (6th Cir. 2010) (citing *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 706 (6th Cir. 2007)).

Plaintiff can establish that she is a member of protected class and that she experienced unwelcome conduct, but her prima facie case ultimately fails. For the purposes of determining whether an environment is hostile, "only harassment *based on the plaintiff's race* may be

---

[11] In her Complaint, Count IV is "hostile environment on the basis of race and worker's compensation injury." However, Plaintiff did not allege that any hostile treatment was related to that injury. Therefore, the Court construes Plaintiff's hostile work environment claim as one predicated solely on racial discrimination.

considered." *Williams v. CSX Transp. Co., Inc.,* 643 F.3d 502, 511 (6th Cir. 2011) (emphasis in original). The Court must first determine what harassment was based on Plaintiff's race and "then [] will ask whether the totality of that harassment was sufficiently severe or pervasive to create a jury question on her claim." *Id.* Absent direct evidence of racial animus, any proof of race-based harassment must be based on "comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80–81 (1998)). "Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Id.* at 511 (citing *Clay,* 501 F.3d at 706).

Plaintiff puts forth the following instances of alleged harassment, occurring from December 2006 to February 2007: (1) Ms. Priest intentionally stepped on Plaintiff's foot once, (2) Ms. Priest walked aggressively up to Plaintiff on more than one occasion, (3) Ms. Priest yelled at Plaintiff in front of customers when she erroneously believed that Plaintiff had returned to work without a doctor's note, (4) Ms. Priest yelled at Plaintiff when looking for the store phone, but rarely, if ever, yelled at white employees, (5) Ms. Priest did not allow Plaintiff to go home when she was experiencing unusually heavy menstrual flow, (6) Ms. Priest never spoke to Plaintiff, even when Plaintiff spoke to her, but Ms. Priest spoke to white employees, (7) Ms. Priest ignored Plaintiff's concerns about heat, causing Plaintiff to faint from heat exhaustion, (8) Ms. Priest gave Plaintiff and other black employees low scores on her "criticals" that resulted in a denial of a pay raise, while Ms. Priest gave white employees higher scores resulting in pay raises, and (9) Ms. Priest cut Plaintiff's hours in favor of white employees.

The alleged instances of walking aggressively, raising her voice, and ignoring Plaintiff are akin to a "mere offensive utterance," and at the walking and yelling do not seem to have

occurred frequently. Ultimately, the alleged conduct is not sufficiently racially severe or pervasive to support Plaintiff's claim. Plaintiff has shown that Ms. Priest engaged in unprofessional behavior and was rude and even obnoxious toward Plaintiff. But Plaintiff has failed to show that any of these actions were race-based. Plaintiff has not put forth any comparator sufficient to satisfy her prima facie case for the heat exhaustion, menstrual flow, and doctor's note incidents. Plaintiff does not provide evidence that any Burger King employee received a raise as a result of alleged preferential treatment on "criticals" scores. Also, Plaintiff does not show that only her hours were cut, nor does she show that this negatively impacted her. Plaintiff's and her coworkers' own subjective beliefs are not evidence that these incidents were racially motivated sufficient to show causation for the isolated incident of stepping on Plaintiff's foot, the aggressive walking, and Ms. Priest's apparent practice of either ignoring or yelling at Plaintiff. "[Plaintiffs'] subjective and conclusory allegations are insufficient to create a genuine issue of material fact regarding whether the work environment was racially hostile. . ." *Lovelace v. BP Products N. Am., Inc.,* 252 F. App'x 33, 40–41 (6th Cir. 2007) (the "cold shoulder" and insults unrelated to race did not have a "direct bearing on the central claim of racial animus.").

For these reasons, the Court will dismiss Plaintiff's claim for racially hostile work environment.

VI.

The Court will now discuss Plaintiff's three remaining claims under state law: wrongful discharge, promissory estoppel, and negligence.

A.

Under Kentucky law, a wrongful discharge is actionable when the discharge is contrary to a fundamental and well-defined public policy, as evidenced by a constitutional or statutory

16

provision. *See Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky. 1985). However, "preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Kentucky Lottery Corp.,* 327 S.W.3d 412, 421 (Ky. 2010). Since the KCRA provides its own causes of action and remedies, the KCRA pre-empts Plaintiff's cause of action for wrongful discharge. *See Gryzb,* 700 S.W.2d at 401 (Ky. 1985); *Shajee v. FedEx Exp.,* CIVA 3:05CV211 H, 2007 WL 61850, at *3 (W.D. Ky. Jan. 3, 2007); *Wiseman v. Whayne Supply Co.,* 359 F. Supp. 2d 579, 592 (W.D. Ky. 2004); *Temple v. Pflugner*, 866 F. Supp. 2d 735, 744 (E.D. Ky. 2011). For this reason, the Court will dismiss Plaintiff's claim for wrongful discharge.

B.

"Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes [her] position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642−43 (Ky. Ct. App. 2003). Under Kentucky law, the elements of promissory estoppel are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *C.A.F. & Associates, LLC v. Portage, Inc.,* 913 F. Supp. 2d 333, 350−51 (W.D. Ky. 2012) (quoting *Res–Care, Inc. v. Omega Healthcare Investors, Inc.,* 187 F. Supp. 2d 714, 718 (W.D. Ky. 2001)) (internal quotation marks omitted). Reliance on the promise must be justified. *Butler v. Progressive Cas. Ins. Co.,* CIV.A.5:04 CV 84 R, 2005 WL 1009621, at *4 (W.D. Ky. Apr. 25, 2005) (citing *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 12−13 (Ky. Ct. App. 1990)).

An at-will employee can claim promissory estoppel only if she can show a specific promise of job security. *See DePrisco v. Delta Air Lines, Inc.,* 90 F. App'x 790, 796 (6th Cir. 2004); *see also Sawyer v. Mills,* 295 S.W.3d 79, 89–91 (Ky. 2009) (stating that promissory estoppel is "alive and well in this Commonwealth" and applying it to a promise of at-will employment); *Brown v. Louisville Jefferson County Redevelopment Authority, Inc.,* 310 S.W.3d 221, 224–25 (Ky. App. 2010) (promissory estoppel applies to an indefinite term); *Street v. U.S. Corrugated, Inc.,* No. 1:08–CV–00153, 2011 WL 304568, at *6 (W.D. Ky., Jan. 25, 2011) (promissory estoppel is "applicable and binding to oral employment at-will agreements").

Plaintiff can meet the first two elements of this claim. Plaintiff and her coworker contend that two employees explicitly promised Ms. Harris that she could have her job back when she returned from her medical leave. An overt promise such as the one Plaintiff alleges would reasonably induce action or forbearance on the part of the promisee.

The two latter elements are fatal to Plaintiff's claim. First, it is unclear what action or forbearance Plaintiff alleges this promise caused. Plaintiff does not allege that, absent this promise, she would not have undergone surgery or would have postponed it. *See Bergman v. Baptist Healthcare Sys., Inc.,* 167 F. App'x 441, 448 (6th Cir. 2006) (no promissory estoppel where Plaintiff would have had surgery necessary to save her baby regardless and where she scheduled the surgery before the alleged promise). Plaintiff admits that she would not have sought work during her recuperation period because she was medically unfit to do so. Plaintiff does not allege that she forewent or undertook any other actions as a result of Burger King's promise.

The last element is whether injustice can be avoided only by enforcement of the promise. Plaintiff immediately began looking for another job upon finding that her Burger King job was

no longer available and secured employment within Ramada Inn in either late 2007 or early 2008, making more per hour than what she made at Burger King. Plaintiff claims that her injury involves having to look for a job, which is admittedly a stressful process. However, Plaintiff found another part-time job within about two months, and during that time she was presumably still receiving the Social Security disability benefits that she has received for decades, and that had been sufficient for her to live on during her recuperation from surgery. Plaintiff claims to have been unhappy at her job with the Ramada Inn. However, given that Plaintiff found a new job in a relatively short amount of time making more than she made at her previous place of employment, this is not the kind of injustice that can be avoided only by enforcement of the promise.

For these reasons, the Court will dismiss Plaintiff's claim for promissory estoppel.

C.

Plaintiff brings a claim for negligence and gross negligence in hiring. She alleges that Burger King negligently hired both Ryan Petty and Gina Priest. To prevail on a claim for negligent hiring, Plaintiff must show (1) Burger King knew or should have known that the employee was unfit for the job in which he or she was employed and (2) the employee's placement or retention created an unreasonable risk of harm to Harris. *See Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) (citing *Oakley v. Flor-Shin, Inc.,* 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). In order to show *gross* negligence, Plaintiff must also show that Burger King acted with either "malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro v. Brown,* 63 S.W.3d 179, 181 (Ky. 2001).

19

It appears that this tort has only been applied in cases in which a third party sues an employer whose employee committed a tort. *See Montell v. Diversified Clinical Servs., Inc.,* CIV.A. 3:12-36-DCR, 2013 WL 4521014, at *13 (E.D. Ky. Aug. 26, 2013). Even if this tort were applicable in this case, Plaintiff has made no showing of facts that Burger King knew or reasonably should have known at the time of Petty or Priest's hiring that either posed a risk of harassment, racial discrimination, or retaliation to Harris. Thus, Plaintiff's claim for negligent hiring fails "because it lacks any factual support from the record." *Id.* The Court need not reach the additional intent element of a gross negligence claim. For this reason, the Court will dismiss Plaintiff's negligence claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment on Plaintiff's claims is SUSTAINED, and these claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record